IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM EMMETT HARMON                                            PLAINTIFF

                   v.                    Civil No. 2:12-cv-02026-JRM

CAROLYN W. COLVIN, Commissioner of
Social Security Administration[1]                                         DEFENDANT

**MEMORANDUM OPINION**

**I.**      **Factual and Procedural Background**

Plaintiff, William Emmett Harmon, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), respectively. 42 U.S.C. Ch. 7, Subchs. II, XVI.

Plaintiff protectively filed his Title II application on November 2, 2009. Tr. 9. On December 3, 2009, Plaintiff also protectively filed a Title XVI application. Tr. 9. In both applications, Plaintiff alleged a disability onset date of March 16, 2009, due to cardiac aneurism, cardiac arrhythmia, coronary artery disease, arthritis, hand injury, knee pain, and depression. Tr. 9, 165. On the alleged onset date, Plaintiff was fifty-four years old with a tenth grade education. Tr. 24, 162, 172. He has past relevant work as a short order cook, assistant restaurant manager, and assembly worker/machine operator. Tr. 17, 200-207.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 65-71, 76-80. At Plaintiff's request, an administrative hearing was held on April 6, 2011. Tr. 20-58. The ALJ rendered an unfavorable decision on August 8, 2011. Tr. 6-18. Subsequently, the Appeals Council denied Plaintiff's Request for Review on December 8, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

**II.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether

the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.     ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since March 16, 2009, the alleged onset date. Tr. 11. At step two, the ALJ found Plaintiff suffered from the following severe impairments: coronary artery disease status post remote myocardial infarction, cardiac arrhythmia, right thumb crush injury, and arthralgias of the bilateral knees status post surgery. Tr. 11-12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12-13.

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he could frequently, but not constantly, handle and finger with his dominant right hand. Tr. 13-17. After eliciting vocational expert testimony, the ALJ found Plaintiff could perform his past relevant work as a chef, short order cook, assistant restaurant

manager, and assembly worker/machine operator. Tr. 17. Accordingly, the ALJ determined Plaintiff was not under a disability from March 16, 2009, the alleged onset date, through August 8, 2011, the date of the administrative decision. Tr. 18.

### IV.    Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) determining his impairments did not meet or equal a listed impairment; (B) improperly dismissing his subjective complaints; (C) improperly determining his RFC; and (D) determining he could return to his past relevant work. *See* Pl.'s Br. 10-20. Defendant argues that substantial evidence supports the ALJ's determination. *See* Def.'s Br. 5-15. For the following reasons, the court finds that substantial evidence does not support the ALJ's determination.

Plaintiff has a history of remote acute anterior myocardial infarction (2002), knee pain with a history of multiple surgeries, and a crush injury to his right thumb. Tr. 32-36, 355-359. He also alleges depression, shortness of breath, fatigue, coronary artery disease, cardiac arrhythmia, and joint pain. Tr. 36-40.

On March 17, 2009, Plaintiff was involved in a work accident that resulted in a crush injury to his right thumb. Tr. 264. X-rays of Plaintiff's right hand revealed some fractures of the proximal portion of the distal phalanx, near the interphalangeal joint. Tr. 265. Stephen Heim, M.D., examined Plaintiff's hand and noted that tendon functions were intact. Tr. 265. He placed a splint on Plaintiff's right hand and opined that surgery was not necessary. Tr. 265. At a followup appointment on March 25, 2009, Plaintiff could flex and extend the metacarpophalangeal joint and extend the interphalangeal joint. Tr. 267. He had good thumb and forefinger pinch. Tr. 267. Dr. Heim noted no signs of infection or deep vein thrombosis. Tr. 267. On April 7, 2009, Dr. Heim

noted that Plaintiff could begin working on range of motion exercises.  Tr. 269.

On February 17, 2010, Plaintiff underwent a mental diagnostic evaluation with Diane Brandmiller, Ph.D.  Tr. 272-278.  Dr. Brandmiller diagnosed Plaintiff with depressive disorder not otherwise specified and estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 65-75.  Tr. 276.  Dr. Brandmiller noted that Plaintiff was able to interact in a socially appropriate manner, communicate in a clear and effective manner, understand, remember, and carry out simple instructions, attend and sustain concentration and persistence, and complete tasks without delay.  Tr. 277-278.  She further noted that Plaintiff would likely respond to stress in a work setting with a tempered response and a problem-solving approach.  Tr. 277.

On February 24, 2010, Plaintiff saw Van Hoang, M.D., for a consultative physical examination.  Tr. 280-284.  On examination, Plaintiff had normal passive range of motion in all extremities, with the exception of ankylosis of the first finger of his right hand.  Tr. 282.  Plaintiff had full range of motion in his hips, knees, and spine.  Tr. 282.  He was able to hold a pen and write, touch his fingertips to his palm, oppose his thumb to his fingers, pick up a coin, stand/walk without assistive devices, and walk on his heels and toes.  Tr. 283.  However, Plaintiff had trouble squatting/arising from a squatting position and had only 70% grip strength in his right hand.  Tr. 283. Dr. Hoang diagnosed Plaintiff with cardiac arrhythmia associated with cardiac aneurysm, ankylosis of the first finger of the right hand, chronic bilateral knee pain (post-traumatic surgical), and depression.  Tr. 284.  He assessed severe physical limitations for work.  Tr. 284.

In July 2010, Plaintiff underwent an additional consultative physical examination with Rebecca Floyd, M.D.  Tr. 331-333.  On examination, Plaintiff had normal limb function, normal strength in his upper and lower extremities, and full grip strength in both hands.  Tr. 331.  He had

normal range of motion in his spine and all extremities, with the exception of first metacarpal PIP stiffness. Tr. 332. Heart sounds were normal, with regular rhythm and rate and no murmurs. Tr. 331. An echocardiogram revealed global hypokinesis, mildly depressed left ventricular systolic function with an ejection fraction estimated at 45%, and trace mitral and triscuspid regurgitation. Tr. 328. Dr. Floyd diagnosed Plaintiff with right first finger stiffness from a mal-healing deformity, arthritis of the knee, coronary artery disease, arrhythmia, and tobacco abuse. Tr. 333. She noted mild fingering limitations on the right, but found no other restrictions. Tr. 333.

On March 15, 2011, Plaintiff presented to Sparks Regional Medical Center with complaints of chest pain and shortness of breath. Tr. 410. Chest x-rays revealed evidence of chronic obstructive pulmonary disease ("COPD"). Tr. 410. Plaintiff underwent a transthoracic echocardiogram and cardiovascular catheterization, which revealed markedly reduced left ventricular systolic function with an ejection fraction estimated at 30%, severe diffuse hypokinesis with variation and more akinetic at the apex, and a medium-sized irregular mass on the apical wall, possibly representing a thrombus. Tr. 411-414. There are no further medical records from this hospitalization.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994)

(quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

After reviewing the evidence of record, the undersigned finds that the ALJ did not adequately develop the record concerning Plaintiff's March 15, 2011 hospitalization. For unknown reasons, the complete records from this hospitalization were not provided in the administrative transcript. The only records available consist of one page of illegible admittance notes and the results of the cardiovascular catheterization and transthoracic echocardiogram. Tr. 410-414. No discharge summary was provided, which would have contained information regarding diagnoses, recommendations, and prognosis. As such, there is considerable ambiguity as to whether Plaintiff suffered a myocardial infarction, as he alleges. Moreover, since the consultative physical examinations and agency review were conducted prior to this admittance, there are no medical opinions on record as to its clinical significance and impact on Plaintiff's functional abilities. Given the significant test results, including markedly reduced left ventricular systolic function with an ejection fraction estimated at 30%, severe diffuse hypokinesis, and a possible thrombus, the undersigned finds that more development of the record is required. Tr. 411-414.

On remand, the ALJ should obtain the complete medical file from Plaintiff's March 15, 2011 hospitalization. Once these records have been obtained and reviewed, the ALJ should reconsider Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of his own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

**V.	Conclusion**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 12th day of March 2013.

/s/ *J. Marschewski*
     HONORABLE JAMES R. MARSCHEWSKI
     CHIEF UNITED STATES MAGISTRATE JUDGE